STRONG *et al. v.* STATE.

(In Banc. Nov. 12, 1945. Suggestion of Error Overruled Dec. 10, 1945.)

[23 So. (2d) 750. No. 35813.]

McNeil, Jones, Goss & Zama, of Hazlehurst, for appellants.

**Greek L. Rice,** Attorney General, by **Geo. H. Ethridge,** Assistant Attorney General, for appellee.

**Roberds, J.,** delivered the opinion of the Court.

Appellants were convicted of unlawful cohabitation under Section 1998, Code 1942, and they appeal.

They say the evidence is not sufficient to support the verdict. The proof of the state discloses that about the year 1932 appellants began to live in the same house, which was the property of Mrs. Bobbitt; that she was then a widow, her husband having died some three or four years previously, and she had one child, Bob, then about 4 years of age, who also resided in the house. Strong had a wife and five children. Appellants lived day and night in the same house, had their meals together, their clothing laundered upon the premises in a common wash. Mrs. Bobbitt did the cooking and household duties and Strong worked about the premises and looked after the farm and livestock, and they went about on the farm and before the public together. In other words, they lived publicly with all the appearances of man and wife, with no one else living in the home with them except the minor son Bob, from 1932 to the date of the trial in November, 1944, and except that during the last seven years there was also a young boy in the home, as will be shown hereinafter. It is shown that Bob was away from the home part of the time and had been away continuously for two months before the trial. No divorce was granted to Strong or his wife and his wife never visited him after he moved into the house with Mrs. Bobbitt, and, so far as this record shows, he never again visited his wife and children, although some of his children did visit him at infrequent intervals. Three of them testified against him. One of them testified that appellants, when he was visiting them, slept in the same room; that he saw them in their night clothing in that room and they came from it in the mornings, and that on one occasion he saw Mrs. Bobbitt sitting on the lap of Mr. Strong. He was supported in this by other testimony.

Mrs. Bobbitt testified that Strong was indebted to her and she had a trust deed on his cattle; that he could not pay the debt and she requested delivery to her of the security, 160 head of cattle, which was done, without foreclosure of the trust deed, and that she then made an arrangement with Strong under which he would come to her home and look after her cattle and farm, for which he would receive twenty dollars per month and his board and lodging and laundry, and she would furnish money with which to buy cattle and the two would share the profits therefrom, and that during all the years that business arrangement has continued, and that there has never been any familiarity between them. Bob, her son, testified that he had never observed any improper conduct between them, although, as stated, he was young in the first years of the relationship and was absent from home at times during the latter years thereof. Other witnesses, some closely akin to Mrs. Bobbitt and some not related, testified they had been at the time at different times, some of the kin remaining several months, and they had never observed any improper conduct between them and that while they were there appellants did not sleep in the same room. However, all the witnesses admitted the continuous living in the same house, and in addition to such manner of living there is direct evidence in this case of particular acts of intimacy as above shown. All of this the jury had before it. We think it is evident there was ample evidence to support the verdict of the jury.

It is next contended there was no proof of the crime being committed within the statutory period of two years prior to the date of the indictment, November 6, 1944. James Strong and one Marcus Gillis testified they were in the home of appellants in December, 1942, and that appellants slept in the same room while the witnesses were there. Appellants made a strong attack upon the accuracy of the time, contending it was in July 1942. But it was for the jurors to determine who was

correct about the date, and, in addition, the jurors had before them the other incriminating circumstances as heretofore set out.

Appellants further say no evidence was competent of the circumstances surrounding, and the conduct of, the parties prior to November 6, 1942, when the statute of limitation began to run in this case. The state having introduced evidence within the two year period from which the jury might conclude there was unlawful cohabitation the prior evidence "was admissible to illustrate or characterize the relations and conduct of the parties shown to have existed or to have occurred within the time covered by the indictment," Stewart et al. v. State, 64 Miss. 626, 2 So. 73, 74; Housley v. State, 198 Miss. 837, 23 So. (2d) 749.

It is also contended by appellants that it was reversible error for the lower court to deny their application for continuance of the case because of the absence of Bob Bobbitt. The indictment was found November 6, 1944, and was filed in court November 9th. On November 10th the case was set for trial November 15th and was then reset for trial November 20th. Bob Bobbitt had been inducted into the armed services in September, 1944, and was at Fort Knox, Kentucky. It was stated in the application the mother had communicated with him and that he was willing to come and testify as a witness, and that she had also solicited the Red Cross to aid in procuring his presence, but it is not shown what effort, if any, the Red Cross had made in that regard. No subpoena had been issued or requested for Bob, nor was there any showing he would be available at any future trial of the case, and the lower court judicially knew the World War was then at a very intense stage, and it was problematical when, or whether, Bob would be available as a witness at any future time. It was also shown that appellants had been tried in February, 1943, for the same offense and that case was still pending (although dismissed after the present indictment was returned), and

it is argued by the state that appellants might well have expected that case to be re-tried, and should have taken the proper steps to have had the witness present at the November term. Bob had testified at the former trial and the district attorney agreed that his testimony so given might be transcribed by the court reporter and be intro- duced by appellants and read to the jury on this trial. That was done. Under these circumstances we think no injustice was done appellants and that action of the trial judge was not an abuse of discretion. Section 1520, Code 1942.

On cross examination of Mrs. Bobbitt the district at- torney was permitted, over objection of appellants, to bring out that on the former trial the jury returned a verdict of guilty against appellants, and that it had been set aside, although the ground for setting it aside is not shown. Appellants earnestly contend this was reversible error. The circumstances were these: Mrs. Bobbitt was on the stand and being examined by her counsel. Under their questioning she had testified, without objection by the state, that a civil suit by Mrs. Strong against her for alienation of the affections of Mr. Strong had been tried in October, 1942, without, however, stating the re- sult of that trial. She also stated that at that time no criminal prosecuion was pending against her. Then the following qunestions were asked and answers given:

"Q. I want you to tell the jury whether there was a criminal prosecution later or not. A. Yes, there was.

"Q. When? A. In February.

"Q. Of what year? A. 1943.

"Q. I want you to tell the jury whether there was a trial in connection with that prosecution. A. There was.

"Q. In February 1943? A. That is correct.

"By Mr. Barlow: If they are going into the details, I am going into all of it.

"By Mr. Goss: We are doing this to fix dates.

"By the Court: If you open up the gate the State has a right to fall in."

Later on cross examination of this witness by the district attorney the following occurred:

"Q. Now then, Mr. Goss asked you about a former trial. A. That is right.

"Q. Did they just acquit you or convict you?

"By Mr. Goss: We object to that.

"By the Court: Objection overruled.

"Q. Did they just acquit you? A. It was demurred.

"Q. I beg you pardon. A. There was a demurrer.

"Q. Did the jury find you guilty? A. Oh, yes, but there was a demurrer.

"Q. And that was all that saved you? A. I don't know about that, Mr. Barlow.

"Q. How did the jury stand? A. You know more about that than I do."

While the district attorney was making his argument to the jury the following took place, as shown by the stenographer's transcript:

"By Mr. Goss: We object to any comment concerning the verdict returned in any other case of a similar nature which occurred at the February 1943 Term of Court, for the reason that this case involves a different period of time, different facts, and for the further reason it is highly prejudicial to the defendants in this case at this time and we ask for a mistrial.

"By the Court: Counsel for defendants went into that former trial and you cannot now object to what the evidence shows. That verdict, gentlemen, as stated, was set aside and the results of that as stated by counsel is correct. Proceed with your argument. Objection and motion overruled. This jury is to consider the case before it and decide it on the facts of this case."

As a general rule it is incompetent and improper to either prove the result of a former trial, or comment thereon, before the jury on a subsequent trial, and that for several obvious reasons, as shown in Berry v. State (Miss.), 22 So. 826; White's Market & Grocery Co. v. John, 153 Miss. 860, 121 So. 825; Blackwell v. State, 166

Miss. 524, 146 So. 628; Gulf, M. & N. Ry. Co. v. Weldy, 195 Miss. 345, 14 So. (2d) 340. But the question is whether it was reversible error, or error at all, under the peculiar circumstances of this case. We do not think it was reversible error for these reasons: The question had been opened up and gone into by appellants. The exact status of that litigation was left up in the air before the jurors. It was before them that a former trial had been had on the same charge and the jurors, or some of them, might well have been confused as to how this affected their duties and powers. That, of course, would not ordinarily justify proving the result of a former trial but it does bear upon what adverse effect, if any, to appellants such proof had upon the jury. And we cannot say under the circumstances here that this was prejudicial to appellants. It was before the jury that while a verdict of guilty had been returned by the prior jury, yet that verdict, for some unshown reason, had been set aside by the court, from which the jurors might naturally infer in the absence of explanation that the trial judge considered the verdict wrong. Again, the trial judge admonished the jury. "This jury is to consider the case before it and decide it on the facts of this case." However, the main reason we do not find error in this regard is that we do not know from this record what the district attorney said to the jury in this argument. Of course, such remarks can be shown either by special bill of exceptions or the reporter's notes (Sections 1639 and 1644, Code of 1942), but, in either case, they must be shown before we can know whether they were harmful. The objection shown here was to "any comment concerning the verdict" in the former case. We do not know what those comments were. Conceivably the district attorney might have told the jury that while it had been brought out that there had been another trial, yet this should not in any manner affect them in their consideration of this case, which

would not have been an improper comment by him. At any rate, we do not know what was said and cannot make speculation a basis for reversal of the case.

Affirmed.