381 So.2d 999 (1980)
Willie N. REDDIX
v.
STATE of Mississippi.
No. 50999.
Supreme Court of Mississippi.
February 13, 1980.
*1000 Hawkins & Henry, Joe Ben Hawkins, W. Eugene Henry, Biloxi, J.W. Miller, Rolling Fork, for appellant.
A.F. Summer, Atty. Gen. by Marvin L. White, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before the Court En Banc.
COFER, Justice, for the Court.
Appellant Willie N. Reddix, Larry Jones (Jones), and John Durango Reddix, Reddix' brother (J.D.) were indicted at the February *1001 1975 term of Circuit Court of the Second Judicial District of Harrison County, of the capital murder of Arthur Weinberger, on December 2, 1974, then the owner and operator of "Art's Levis" (Art's) on Howard Avenue in Biloxi. The indictment charged that the crime was that denounced in Mississippi Code Annotated, Section 97-3-19(2)(e), (Supp. 1979), which defines capital murder in this case in the following language:
(2) The killing of a human being without the authority of law by any means or in any manner shall be capital murder in the following cases:
* * * * * *
(e) When done with or without any design to effect death, by any person engaged in the commission of the crime of rape, burglary, kidnapping, arson or robbery, or in any attempt to commit such felonies.
Appellant was tried on this indictment in 1975, and was convicted and sentenced to suffer the death penalty. He was eighteen years old at the occurrence. Heeding the shadows on the validity of our statutes on capital punishment as cast in Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), this Court rendered its opinion in Jackson v. State, 337 So.2d 1242 (Miss. 1976), holding all persons under death sentence prior to the Jackson decision must be retried, and setting out guidelines therefor, including the holding of bifurcated trials, one on guilt of the indictee, and, if found guilty, another on the sentence to be imposed.
Under the Jackson case, the 1975 conviction of Reddix was reversed, by an unpublished opinion on March 2, 1977, and remanded for new trial. 342 So.2d 1306 (Miss. 1977).
The cause went to trial again in December 1977 being tried in the two phases, resulting in conviction of capital murder and death sentence, and the case is now again before us.
The proof in the case is largely undisputed, but will be noticed here in appropriate detail.
During the later morning of December 2, 1974, Ovell McGee was engaged in a landscaping tractor-driving operation beside a mall on Magnolia Street, near a parking lot, to the south of Howard Street in Biloxi. He testified that a white Cadillac automobile occupied by three black males was driven into the parking lot. Two of the three occupants emerged from the vehicle, and went north along Magnolia Street to Howard Avenue, almost a block away. The third occupant, the driver, stayed in the car which remained parked there until the two others returned about twenty-five to thirty minutes later, one approaching from one way, carrying a footlocker, and wearing ragged-topped combat boots; the other one had a leather jacket coat on his shoulder when he returned. The bearer of the footlocker put it in the car, the two of them got in the car, and they drove away.
Raumond Real was employed in a jewelry store a few doors from Art's on Howard Avenue, and was returning from lunch, when he observed a black man carrying a footlocker, handling it as if it were heavy; the man turned left (southeast) off Howard on to Reynoir; Real drove around to park his automobile, and came across the man in an alley still with the footlocker.
Preston Sullivan had testified in the first trial, reversed and remanded, as above shown, but had become deceased since. His earlier testimony was read into the record [Mississippi Code Annotated, section 13-1-111 (1972)], wherein he said he had been in Art's before December 2, 1974, and went in it about 11:30 a.m. on that date, and as he was approaching the store, he observed on the street a black man, wearing a watchcap, and having a navy peacoat slung over his shoulder, and wearing army fatigue trousers. He entered the store and saw Arthur Weinberger lying in a doorway to an office; he was lying on his back; and there was blood in a puddle around his head. The witness went to another place of business and caused the police to be called; then, thinking of the man dressed as above coming out of the store, he went back across *1002 the street and all he could see "was that little green cap just for a second and then it disappeared."
Dr. Bazzone, a neurological surgeon, testified to the victim's condition when he had been brought to a hospital emergency room, a bruise over his eye, about four crossshaped wounds on the left side of the back of his head, some bone fracture, and appeared to be alive but unconscious. The hospital record showed the victim was seventy-seven years old. It was the physician's medical opinion that the victim had died from head injuries which caused damage to his brain resulting in his decease. The victim died at 4:36 p.m. that day.
Having obtained a search warrant therefor, Robert Payne, in charge of the criminal investigation division of the Biloxi Police Department, searched the home of Annie Lee Reddix, appellant's mother, where appellant and J.D. also resided, and found a locked footlocker with merchandise in it, and also a pair of combat boots with ragged or fringed tops on them. On these boots were stains that appeared to be blood spots. Mrs. Lerline Blanq, on, and for three or more years preceding, December 2, 1974, was manager of Art's Levis Store, and possessing a very high degree of familiarity with the store's merchandise, returned to the store on that day, after her lunch break, about twelve noon, found the store and merchandise in a state of disarray, and the victim beaten and bleeding. She examined the footlocker and merchandise in it, when it had been taken on the search warrant, and identified them as having been taken from Art's; she testified to money on hand, in process of being prepared for deposit when she left for lunch, and its not being there when she returned.
Lula Bell, aunt of appellant, had testified for the state in the earlier reversed trial, as well as several other times in hearings on this case and its companion case or cases. When called as a witness, she undertook to invoke the protection of the Fifth Amendment to the United States Constitution. Out of the presence of the jury, the state went over her former testimony and was met with denials or failure of memory as to her earlier proof. She was held by the court to be a hostile witness, whereupon her testimony was largely a confrontation with her answers in the earlier record. She had known appellant all his life; knew J.D.; had seen Larry Jones, the third co-indictee, about three times; she did not know where Art's Levis was located except that it was on Howard Avenue; and she had known the victim for a number of years and had traded with him. She was in the area of the store the morning of December 2, 1974, but did not remember saying it was between nine-thirty and ten a.m., nor that her first stop was Betty Gary's, a store across the street near Art's; nor that she entered that store by the side entrance. She did not remember how long she was in Penney's; but she came out on Howard Avenue; she did not remember having testified that she saw appellant when she came out of Penney's or that he was running east pretty fast on Howard Avenue, on the side where Art's was located, or that he had a dark coat on his shoulder. She did not remember her earlier testimony that there was no doubt in her mind about it being appellant whom she saw.
Appellant's confession signed by him, subject of one of the assignments of error, was admitted into evidence, as follows:
I, Willie Reddix, was at my home on the 2nd of December, 1974, and Larry Jones was at my home. Larry is also known as Catfish. J.D. Reddix was not there at this time. He did not know anything about the plan that Larry and I had in mind. When J.D. came home, we asked him to give us a ride uptown. He took us uptown and parked in the lot behind the place that used to be Bradley's Cleaners. Larry Jones and I got out of the car, but my brother, J.D. Reddix, did not get out of the car. This was about 10:45 a.m. Larry and I walked uptown for about five or ten minutes. Then I, Willie Reddix, went into Art's Levi Store, and I began to question the man about a coat. He showed me a couple of coats, and he had his back turned to the door. *1003 About this time, Larry Jones, came in the store. I kept talking to the man to keep him from seeing Larry. For about the next three seconds, Larry hit the man about three times with a Stilson wrench. Then I ran to the door to keep a watchout. I had no idea that the man was dead. Larry drug the man into the office. We gathered all the goodies. Larry took shirts and pants and hats and put them in a footlocker. I was at the door watching all the time. Larry said, "I can't get the cash register open." So I opened it for him. At this time I went in the office to see was Mr. Art dead, but he was still breathing, so I put his coat under his head, and then we left the scene. Larry carried the footlocker out of the store. Larry went to the left, on Croesus Street, and I went east on Howard Avenue. I was carrying a black jacket in my hand which I had took from the store. We met back at the car. J.D. was still in the car. Larry put the footlocker in the backseat of the car and he sat in the back seat. I got in the front seat. I gave the jacket to J.D. and told him, "Here is a jacket." J.D. did not ask us where we had been or where we got the things from. The only thing he said was "What you all got?" and I told him to just drive. We went home and parked the car in front of my house, and Larry took the footlocker into my house. When I opened the cash register, we both took the money out. I got about fifty dollars, and I got one silver dollar. After we got home, we laid low for the rest of the day. All J.D. got was the coat I gave him. We did not tell him what we had done. The gun was not used in the holdup that Larry had, just the Stilson wrench.
We now reach the assignments of error. They are:
I.
THE PROCEEDINGS UNDER WHICH THE APPELLANT WAS TRIED CONSTITUTE A VIOLATION OF THE UNITED STATES CONSTITUTION.
II.
THE TRIAL COURT ERRED BY FAILING TO SUSTAIN THE APPELLANT'S MOTION TO SUPPRESS HIS CONFESSION.
III.
THE TRIAL COURT ERRED BY FAILING TO SUSTAIN THE APPELLANT'S MOTION FOR A MISTRIAL FOR REFERENCES MADE BY THE PROSECUTING ATTORNEY TO A PREVIOUS TRIAL OF THE DEFENDANT.
IV.
THE COURT ERRED BY ALLOWING INTO EVIDENCE TESTIMONY OF A WRENCH RECOVERED BY OFFICER TICHELL.
V.
THE STATE SHOULD NOT HAVE BEEN ALLOWED TO PRESENT EVIDENCE OF CONVICTIONS THAT OCCURRED SUBSEQUENT TO THE OFFENSE FOR WHICH THE APPELLANT WAS ON TRIAL.
VI.
STATE'S INSTRUCTION NO. 3 SHOULD NOT HAVE BEEN SUBMITTED TO THE JURY.
VII.
THE DEATH PENALTY WAS IMPOSED UNDER THE INFLUENCE OF PASSION, PREJUDICE OR OTHER ARBITRARY FACTORS.
VIII.
THE SENTENCE OF DEATH IS EXCESSIVE AND DISPROPORTIONATE TO THE PENALTY IMPOSED IN SIMILAR CASES, CONSIDERING BOTH THE CRIME AND THE APPELLANT.
Appellant maintains that "the proceedings under which the appellant was *1004 tried constitute a violation of the United States Constitution."
This argument has been made in multiple cases and found to be without merit. Irving v. State, 361 So.2d 1360 (Miss. 1978); Washington v. State, 361 So.2d 61 (Miss. 1978); Bell v. State, 360 So.2d 1206 (Miss. 1978).
The assignment brings into review the entire trial procedure and we are to notice the sentencing phase, also, in disposing of the assignment.
What appellant perceives to be an apparent conflict between the Jackson decision, supra, and Mississippi Code Annotated, Sections 99-19-101 and 99-19-103 (Supp. 1978), is used as basis for confusion as to rights of defendants to prove mitigating circumstances. The Jackson decision says, in part:
At this hearing, [the sentencing phase] the defendant may prove his lack of a prior criminal record as a mitigating circumstance and may also adduce proof of any other circumstance or combination of circumstances surrounding his life and character or the commission of the offense with which he is charged that would be reasonably relevant to the question of whether he should suffer death or be sentenced to life in prison.
(337 So.2d at 1256).
On April 13, 1977, Sections 99-19-101 and 99-19-103 took effect. Section 99-19-101 provides, as to the sentencing phase:
In the proceeding, evidence may be presented as to any matter that the court deems relevant to sentence, and shall include matters relating to any of the aggravating or mitigating circumstances... .
[and]
(6) Mitigating circumstances shall be the following:
(a) The defendant has no significant history of prior criminal activity.
(b) The offense was committed while the defendant was under the influence of extreme mental or emotional disturbance.
(c) The victim was a participant in the defendant's conduct or consented to the act.
(d) The defendant was an accomplice in the capital offense committed by another person and his participation was relatively minor.
(e) The defendant acted under extreme duress or under the substantial domination of another person.
(f) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.
(g) The age of the defendant at the time of the crime.
Appellant points further to the fact that after the Jackson decision and the effective date of Sections 99-19-101 and 99-19-103, (April 13, 1977), and just before he was put to trial again after reversal, the decision in Gray v. State, 351 So.2d 1342 (Miss. 1977), was rendered wherein note was taken of the new statutes, and the Court said that "[j]uries shall be instructed in accordance with the statute in all trials after April 13, 1977, the effective date of the statute." (351 So.2d at 1349).
He says that "the last sentence gave the new statute retroactive effect forcing the trial court not only to apply the vague directions of Jackson, but also the provisions of the new statute. The effect of this was to remove from consideration of the jury and to disallow the court to instruct the jury regarding several mitigating factors which might have been permissible under the Jackson decision."
In the Washington case above, 361 So.2d 61, 68 (Miss. 1978), this Court declared itself to be "committed to the `individualized consideration of mitigating factors' in each case, and that the only limitation placed on the introduction of evidence of mitigating circumstances is that it must be reasonably relevant." (Emphasis already there.)
Even if the Jackson decision were vague and unclear, and even if the statutes and the Gray decision above tend further to make for vagueness and lack of clarity, neither of which we find to be true, we are of the view that appellant may not complain, *1005 for he was given instructions liberally extending to him the benefit of these factors as mitigating circumstances in the state's own sentencing instruction:
(1) The age of the defendant at the time of the crime.
(2) Any mitigating circumstances or combination of mitigating circumstances surrounding his life and character.
(3) Any mitigating circumstances or combination of mitigating circumstances surrounding the commission of the offense with which he is charged.
What circumstances appellant would have had the jury consider do not appear. As argued by the state, under the mitigating principles in the instruction granted, appellant could have presented evidence of lack of murder intention on his part.
We will examine the mitigating circumstances to which testimony was given hereinafter.
Appellant cites and urges the weight of Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), but we distinguished it in Washington v. State, supra.
In addition to what we have said, effort has been made in several of our decisions under the statute here controlling to procure review by the United States Supreme Court, only to have certiorari denied by that Court.
Appellant's second assignment of error attacks the trial court's failure to sustain his motion to suppress his confession.
The crime of which appellant was accused took place on December 2, 1974. About the tenth of December 1974, appellant was in the Jackson County Jail on other charges, and had given a fictitious name. How it was discovered is not clear from the record, but, about that date, Captain Florian Tichell of the Biloxi Police Department, investigating the Art's crime, accompanied by Sergeant Chester of the Biloxi Police Department, went to the Jackson County Jail at Pascagoula, and talked to appellant about the Art's case, asking him if he was involved in the crime, telling him that J.D. was involved in it, and asking him if he knew anything about it, which he denied. After about a half-hour conversation, the officers left.
On December 14, 1974, Tichell and Officers Chester and Hamilton brought appellant from the Jackson County Jail to the Biloxi Jail. Tichell booked him. During this contact and journey, Art's case was not discussed with appellant. On December 15, 1974, Tichell asked him for a statement and he told Tichell that, if he had anything to tell him, he would do so the next morning.
On the morning of December 16, 1974, the appellant executed a written waiver of his Miranda rights:
CONSENT TO SPEAK AND WAIVER OF RIGHTS
I, Willie Reddix, Age 18, Date of Birth 7/30/74 [sic] residing at 467 East Davison St. in the City of Biloxi state of Miss. have read this statement of my rights/have had my rights read to me by Capt. Tichell who has identified himself to me as a member of the Biloxi Police Department. I understand what my rights are and I am willing to make a statement and answer questions. I do not want a lawyer at this time, I understand and I know what I am doing. No threats or promises have been made to me, and no pressure or coercion of any kind has been used against me.
SIGNATURE: /s/ Willie Reddix Date: 7/16/74
Time: 11:32 A.M. Place: Biloxi Police Department
He, thereupon, gave and signed the confession quoted at length hereinabove at the beginning of which appears the following:
Willie N. Reddix, of the age of 18, residing at 467 East Davison St., City of Biloxi, County of Harrison, State of Miss., have been advised of my rights by Capt. Tichell, of the Biloxi Police Department as follows: Before we ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions, and to have him with you *1006 during questioning. You have this right to the advice and presence of a lawyer. If you cannot afford a lawyer, one will be appointed for you at no expense to you. If you wish to answer questions now, without a lawyer present, you have the right to stop answering questions at any time. You also have the right to stop answering at any time until you talk to a lawyer. I have further been warned and advised that I do not have to make a statement of any kind or character whatsoever, nor do I have to incriminate myself in any way. Further, I have been advised that in the event I do make a statement that the same may be used against me in any court.
After being so advised and cautioned, I do hereby expressly waive my rights to counsel and his advice, and do hereby make the following voluntary statement, freely, without any fear or threat having been made to me, and without any promises of reward of any kind and with the knowledge that this statement that I now make may be used against me on any trial or trials for the offense or offenses concerning the matter which the following voluntary statement is made; that as stated, this statement is made of my own free will without any promise of reward, without any fear or threat of any kind having been made to me, and without any coercion, and without any leniency or offer of leniency being made to me by any person whomsoever.
* * * * * *
I further state that I have read this entire statement, initialed all corrections, and signed this statement in the presence of the below listed witnesses, and that it is correct and true as written.
/s/ Florian Tichell /s/ Willie Reddix 
(Signature) (Signature)
Capt. Biloxi Police 467 East Division St. 
(Title and/or Address) (Address)
/s/ Charles Kriss 
(Signature)
Major B.P.D. 
(Title and/or Address)
Following the preliminaries next above, Reddix made the statement hereinabove quoted, to Tichell alone. Appellant would not make any statement if a third person were present, and others were excluded from the conversation. The record is replete with evidence that he was given his Miranda rights on more than one occasion including this meeting wherein and just before the confession was made.
Appellant says the primary objection to the confession was that it was not free and voluntary because of fears and promises made to him. In the motion to suppress, he said there were no threats, promises, or duress, and Tichell testified to the same. Appellant said Tichell "just told me that he would see what he could do for me," but he did not promise anything. He further testified that the only reason he gave the statement was to free J.D. from "a lie that they had put on him. He wasn't involved in it."
He testified that the officers told him J.D. was charged with capital murder, and they would put him in the gas chamber if found guilty. This testimony is contradicted. Tichell, in rebuttal, also gave evidence that he made no promises to appellant concerning appellant or J.D.
It seems apparent from the record that appellant was concerned about J.D. and what might happen to him, as well he should have been. The record will not support a conclusion that this earnest concern was used by the officers to overreach him and lead him to an involuntary confession, or that it had that result.
The decision in Agee v. State, 185 So.2d 671 (Miss. 1966), collates certain rules relative to confessions and the taking and use of them.
The State has the burden of proving the voluntariness of a confession. This burden is met by the testimony of an officer, or other person having knowledge of the facts, that the confession was voluntarily made without any threats, coercion, or offer of reward. This makes out a prima facie case for the State on the question of voluntariness. Lee v. State, 236 Miss. 716, 112 So.2d 254 (1959). When objection is made to the introduction of the confession, the accused is entitled to a preliminary hearing on the question *1007 of the admissibility of the confession. This hearing is conducted in the absence of the jury. Lee v. State, supra, is also authority for the proposition that when, after the state has made out a prima facie case as to the voluntariness of the confession, the accused offers testimony that violence, threats of violence, or offers of reward induced the confession, then the State must offer all the officers who were present when the accused was questioned and when the confession was signed, or give an adequate reason for the absence of any such witness.
See also Holmes v. State, 211 Miss. 436, 51 So.2d 755 (1951).
(185 So.2d at 673).
In Clemons v. State, 316 So.2d 252 (Miss. 1975), the rule was also stated:
This conflicting evidence presented a question of fact to be determined by the trial judge who was in the best position to observe the witnesses as they testified. We have consistently held that where evidence is conflicting on the question of whether a confession was voluntarily made, that the issue is to be determined by the trial court, and upon review, this Court will not disturb the trial court's finding unless it appears to be contrary to the evidence. Ivey v. State, 246 Miss. 117, 149 So.2d 520 (1963). (316 So.2d at 253).
The rules from the Agee decision supra, were all met in the advance inquiry into the validity of the confession, and the trial judge resolved all conflicts in favor of the voluntariness and admissibility of it. We are of the view that his decision is supported by, and not contrary to, the evidence, and the assignment of error that the motion to suppress should have been sustained is not well taken.
Appellant's third asserted error is in the trial court's failure to sustain his motion for a mistrial for references made by the prosecuting attorney to a previous trial of the defendant. Lula Mae Bell, whose testimony has been hereinabove summarized, had testified in the earlier trial of appellant on this charge, reversal of which case has also been set out hereinabove. The witness, appellant's aunt, could not remember earlier testimony, after she had been found to be hostile to the state. Using the record of her testimony in the first jury trial, the district attorney was cross examining her, in the course of which there was this exchange:
Q. Do you remember, Mrs. Bell, my asking you if you saw Willie Reddix in the court room, and you said, "Yes, I do, back on the date you testified here in March of 1975."
A. I remember that.
Later there was this question or statement by the district attorney:
Q. That's all I'm asking you. I know it's hard on you testifying against your nephew but you've done it before, and I'm just telling you to tell the truth.
At the first of these exchanges, appellant made a motion for mistrial, and at the last one, the motion was renewed, and when the motion was overruled each time it was made, there was no request that the jury be instructed to disregard the testimony and therefore no error. Clanton v. State, 279 So.2d 599 (Miss. 1973).
Appellant relies upon Strong v. State, 199 Miss. 17, 23 So.2d 750 (1945). In that case the defendant had gone into testimony as to another case described as being that of a similar nature to the one on trial, and, as the district attorney was making his argument to the jury, the defendant objected, and the court, noting the defendant had opened the door to the argument, overruled the objection and instructed the jury to consider the present case on its own facts. Assigned as error on appeal, this Court said:
As a general rule it is incompetent and improper to either prove the result of a former trial, or comment thereon, before the jury on a subsequent trial, and that for several obvious reasons ... (citing authorities). But the question is whether it was reversible error, or error at all, under the peculiar circumstances, of this case. We do not think it was *1008 reversible error for these reasons: The question had been opened up and gone into by appellants. The exact status of that litigation was left up in the air before the jurors. It was before them that a former trial had been had on the same charge and the jurors, or some of them, might well have been confused as to how it affected their duties and powers.
(199 Miss. 27, 23 So.2d at 752).
Miller Transporters, Ltd. v. Espey, 187 So.2d 876 (Miss. 1966), was a second trial after reversal in this Court. The mandate on that reversal was introduced in evidence. There was objection thereto and its introduction was assigned as error, on the ground that appellant's rights were prejudiced thereby. This Court disagreed because appellant had "opened the door." We further observed, however:
The general rule is that opinions and mandates of appellate courts are not proper evidence in the retrial of a cause of action. This is so because the opinion or mandate may advise the jury or comment upon the evidence. Strong v. State, 199 Miss. 17, 27, 23 So.2d 750 (1945); 88 C.J.S. Trial, § 179 at p. 349 (1955). However, in the instant case, the mandate does not review or comment on the evidence in the former trial, and under these circumstances, we cannot say that permitting the mandate to be shown to the jury requires a reversal in this case. Strong v. State, supra.
(187 So.2d at 877).
We fail to find error in this assignment. Having done so, the further observation is made that, although we know Harrison County is densely populated, highly progressive, and with many matters and activities occupying the minds of its people, we are unable to attribute to the jury in this case a degree of naivete that would cause on its part an unawareness of the earlier trial, conviction, and reversal, but would know of it arising, if not earlier, from the voir dire testing of their qualifications to sit as jurors, and the fact that Lula Mae Bell had testified before in a case apparently with facts similar to these (although she was the state's first witness.)
The fourth assignment of error arises from the court's allowing into evidence of testimony of a wrench recovered by Officer Tichell.
Appellant's confession, held hereinabove properly admitted in evidence, had shown Jones wielded a Stilson wrench in the murder of the victim. Tichell, who took the confession, was on cross examination, when these questions were asked and answered:
Q. And you would also agree that Willie told you that Larry hit the man three times with a Stilson wrench?
A. Yes, sir.
Q. That was what Willie told you on that date?
A. Yes, sir.
* * * * * *
Q. Willie also told you about a Stilson wrench, did he not?
A. Yes.
Q. Did you ask him any further questions about that Stilson wrench?
A. Not that day, no.
Q. Did you ask him on another occasion about the Stilson wrench?
A. Yes, after I recovered the wrench, I asked him about it.
Q. After you recovered the wrench?
A. Yes.
Q. Where did you recover the wrench?
A. I recovered the wrench from a Mr. Harris on Nixon Street.
Q. When did you recover that?
A. Oh, about maybe one day, maybe two days later.
Q. What did you ask Willie about the wrench?
A. When I recovered the wrench, I asked Willie was that the wrench. He identified that as being the wrench that was used.
BY MR. HENRY: We would ask that the jury be excused at this time.
The jury was excused, and there was further questioning, and discussion between *1009 counsel as to a stipulation earlier made which might keep the wrench (and the testimony about it) from being in this record. The jury returned to the courtroom, and the state, on redirect, asked Tichell the question:
Q. What did the defendant tell you about the wrench?
A general objection was made by the appellant, which was sustained as to the form of the question. The wrench was made an exhibit for identification, and later an objection was sustained to the state's offer of it and some other exhibits already in the record for identification. Hence, it was never admitted into evidence.
From what we have just quoted and delineated from the record it is seen that the matter of the location of the wrench and its identification as being that used in the robbery were matters first injected into the record by appellant on cross examination, and whatever damage there was to appellant's defense was done, or largely done, by appellant. Without further citation of authority the Strong and Miller Transporter decisions supra are a complete answer to this self-made error and the state did not cause it at all.
Appellee's brief quotes from State v. Apple, 121 N.C. 584, 28 S.E. 469, 470 (1897): "If the defendant goes fishing in the state's waters, he must take such fish as he catches."
We conclude that appellant may not assert this as error.
Appellant assigns as his fifth error that the state should not have been allowed to present evidence of convictions that occurred subsequent to the offense for which the appellant was on trial.
The offense, the basis for the indictment herein, took place on December 2, 1974. In March 1975 appellant was convicted and sentenced in this case. An appeal was taken to this Court. On November 20, 1975, he entered pleas of guilty to two charges of armed robbery and two charges of kidnapping in the Circuit Court of Jackson County. On March 2, 1977, this Court reversed the conviction and sentence in this cause, and remanded the cause for new trial. The new trial took place in December, 1977, and in that trial proof of his conviction on guilty pleas of armed robbery and kidnapping was introduced in evidence during the sentencing phase. Appellant objected to this proof "on the grounds that these are offered under an ex post facto statute."
Section 99-19-101(5)(b) (1979 Supp.) lists as one of the limited number of aggravating circumstances which may be proven in the sentencing phase of a capital murder case,
(b) The defendant was previously convicted of another capital offense or of a felony involving the use or threat of violence to the person.
This question arose in the companion case of Jones v. State, 381 So.2d 983 (Miss. 1980), and it was there said:
Another problem which deserves comment arose in the sentencing phase. The lower court admitted evidence of an armed robbery conviction of the appellant entered after the December 2, 1974, murder of Weinburger. This conviction was affirmed on appeal in a per curiam opinion. Jones v. State, 340 So.2d 17 (Miss. 1976).
Among the aggravating circumstances available for consideration in capital cases under Mississippi Code Annotated section 99-19-101 (Supp. 1979), subsection (5)(b) is that: "The defendant was previously convicted of another capital offense or of a felony involving the use or threat of violence to the person." (Emphasis added). In employing the word "previously", the statute designates no time frame. The question arises as to whether the legislature meant previous to the commission of the capital offense or previous to the trial for it.
We conclude the legislature intended to relate the word "previously" to the time of trial, so that a conviction between the time the capital offense was committed and the time of trial for it may be admitted into evidence as an aggravating circumstance. We think this, because a *1010 wide leeway is permitted the appellant to offer mitigating circumstances in avoidance of the death sentence, while an extremely limited type of behavior may be offered by the state in seeking capital punishment. In our opinion, the legislature undoubtedly intended a weighing of both at the time of sentencing so the past behavioral patterns likely to affect the defendant's future behavior might be evaluated by the jury in deciding whether the defendant will live or die. We think there is no more justification for terminating consideration of the defendant's criminal behavior at the time of the offense than there is for terminating consideration of favorable behavior at that time. All go to the question of whether the most severe punishment will serve a legitimate social purpose untainted by vindictiveness.
Thus, we have committed ourselves to a position contrary to appellant's present assertion of error.
In the sixth place, appellant says state's instruction No. 3 (on the sentencing phase) should not have been submitted to the jury.
In the sentencing phase of the case, the state showed as aggravating circumstances two pleas of guilty and sentences on indictments charging appellant with kidnapping and two pleas of guilty and sentences on indictments charging appellant with armed robbery, all in the Circuit Court of Jackson County. (These, as shown hereinabove, were crimes committed after the fatal assault on the victim in this case.)
Following the proof by the state next above, appellant produced James Wren, the Harrison County Sheriff's jailer for the Second District of that county, who testified that he had known appellant in the jail, and knew his general reputation for peace or violence and it was good. On cross examination, he said all he knew was what he had learned in six months of acquaintance with appellant from people in the jail, and that what he was saying was that appellant had not given him any trouble.
Appellant brought his mother to the stand, and she, Annie Lee Reddix, testified that he had gone to the eighth grade in school.
As his final witness in the sentencing phase, appellant brought Richard Spencer, Harrison County Deputy Sheriff, assigned to the Second District Jail at Biloxi, who testified that, as to appellant's reputation for peace or violence, some say one thing and others say another, but that they had no trouble with him at the jail.
On mitigating circumstances, two instructions were given, the appellant requesting none.
The burden of appellant's argument here is that the court should have given more precisely, and in more detail, mitigating circumstances and that there are degrees or various weights of circumstances, and that one circumstance may be sufficient to outweigh all opposing circumstances in the record. As we treated this instruction early in this opinion, the jury was much more favorably instructed than required under section 99-19-101. The jury was instructed that "any mitigating circumstances or combination of mitigating circumstances surrounding his life and character" and "any mitigating circumstances or combination of mitigating circumstances surrounding the commission of the offense with which he is charged," were for its consideration.
Appellant maintains that there should have been spelled out as mitigating circumstances, for instance, that appellant had no specific intent to cause the death of the victim, but nobody said he did not, and the record shows he purposely diverted the victim's attention until his accomplice could deliver the fatal blows. He further argues that appellant was an accomplice whose participation was relatively minor, but this, too, is contrary to the proof which showed him on an equal footing with Jones in the crime.
In addition to the absence of a record supporting these asserted mitigating circumstances, appellant could have requested an instruction embodying them, and then, if refused, assigned the refusal as error.
*1011 Under Newell v. State, 308 So.2d 71 (Miss. 1975), for failure to instruct without specific request therefor, the Court may not be put in error as here undertaken. Voyles v. State, 362 So.2d 1236 (Miss. 1978), certiorari denied, 441 U.S. 956, 99 S.Ct. 2184, 60 L.Ed.2d 1059 (1979); Washington v. State, 361 So.2d 61 (Miss. 1978); certiorari denied, 441 U.S. 916, 99 S.Ct. 2016, 60 L.Ed.2d 388 (1979); Irving v. State, 361 So.2d 1360 (Miss. 1978); certiorari denied, 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979); Jordan v. State, 365 So.2d 1198 (Miss. 1979); certiorari denied, ___ U.S. ___, 100 S.Ct. 175, 62 L.Ed.2d 114 (1979).
In the Lockett decision supra, appellant quotes in support of his thesis the following:
We conclude that the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.
(Emphasis not by us).
(438 U.S. at 604, 98 S.Ct. at 2965, 57 L.Ed.2d at 990).
We are of the view that the trial, including the instruction attacked, complied well with this requirement.
The seventh assignment of error is that the death penalty was imposed under the influence of passion, prejudice or other arbitrary factors.
Basis for this assignment is threefold: (1) the gruesome pictures admitted in evidence; (2) Dr. Bazzone's description of the victim's wounds; and (3) the Stilson wrench testimony noticed in assignment of error No. 4 above.
Appellant cites no authority, but we notice his arguments nevertheless. In addition to citing no authority it is evident in the record that there was no objection to the pictures or to the physician's rather detailed description of the wounds, emergency treatment of them, and their being the cause of his death. Appellant also complains that Dr. Bazzone's testimony established the cause-of-death element of the corpus delicti.
We recognize that pictures can be gruesome and repelling. There comes to mind no picture portraying wounds such as here present that might be pleasantly attractive. We have consistently held that the competency, relevancy, and materiality of photographs are within the sound discretion of the trial judge, who will also determine whether such pictures have legitimate evidentiary purpose or value. This holding extended to the death penalty cases of Voyles v. State, supra, and Irving v. State, supra.
We have sufficiently dealt with, and disposed of, the Stilson wrench testimony, now here again argued.
It is argued, also, that the use of the same jury in both the guilt phase and the sentencing hearing was prejudicial to appellant, this jury, at the guilt stage, having heard Dr. Bazzone's testimony and the Stilson wrench evidence, and having seen the photographs of the victim. Section 99-19-101(1) provides for use of the same jury for both hearings, although it does not necessarily so mandate. There was no objection to this procedure nor was there request that another jury hear the sentencing case.
We find this assignment to be without merit.
Appellant's eighth and final assignment is that the sentence of death is disproportionate to the penalty imposed in similar cases, considering both the crime and the appellant.
It was not necessary that appellant have any design to effect the victim's death, while appellant was engaged to the commission of the crime of robbery. He and Jones, his accomplice, had a plan for and in what they were about. It is argued that the record does not show what the plan was. The poet said that the best study of mankind is man, and Holy Writ says, "By their fruits ye shall know them." There is no showing in this record that anything unanticipated *1012 occurred, to throw them off balance or to change their course. Holding the victim's attention from Jones was as much a part of Jones' bludgeoning the victim as if appellant had physically restrained him while his head was being crushed.
In Culberson v. State, 379 So.2d 499 (Miss. 1979), this Court unanimous in its decision of guilt, said:
Presently, we can say without doubt the appellant schemed and participated in the unlawful undertaking which resulted in death. The subjunctive nature of the intention to kill makes it no less deliberate and no less deserving of capital punishment than if it had been expressed, in our opinion. The felon who causes death in furthering his crime manifests a callous disregard for human life, because he subordinates the life of the innocent to his desire for gain, thereby inviting the outrage of a society understandably bent upon protecting itself from physical violence.
Price v. State, 362 So.2d 204 (Miss. 1978), while it involved a party found guilty and sentenced to life imprisonment in a bifurcated hearing in a capital murder case, states again the law in this way:
It is also familiar law that when two or more persons act in concert, with a common design, in committing a crime of violence upon others, and a homicide committed by one of them is incident to the execution of the common design, both are criminally liable for the homicide. McNeer v. State, 228 Miss. 308, 87 So.2d 568 (1956). The fact that the accused did not fire the fatal shot does not relieve him from criminal responsibility for the death of Mrs. Green who was slain by the accused's confederate in carrying out the common design to rob. Carrol v. State, 183 Miss. 1, 183 So. 703 (1938).
(362 So.2d at 205).
The Lockett case, supra, involved the conviction of a party to a murder in connection with a robbery. The convicted person was not in the shop when the shop owner was killed. The conviction was reversed, not because there was shown no intent on her part, but rather because, in the opinion of the United States Supreme Court, the Ohio statute under which she was convicted improperly limited the permissible mitigating factors, not including defendant's minor role among the partners in the crime.
By mandate of the statute we have reviewed the following capital murder cases: Jones v. State, 381 So.2d 983 (Miss. 1980); (companion case to this one); Culberson v. State, 379 So.2d 499 (Miss. 1979); Gray v. State, 375 So.2d 994 (Miss. 1979); Jordan v. State, 365 So.2d 1198 (Miss. 1979); Voyles v. State, 362 So.2d 1236 (Miss. 1978); Price v. State, 362 So.2d 205 (Miss. 1978); Irving v. State, 361 So.2d 1360 (Miss. 1978); Washington v. State, 361 So.2d 61 (Miss. 1978); Bell v. State, 360 So.2d 1206 (Miss. 1978); Nealy v. State, 354 So.2d 78 (Miss. 1978); and Hill v. State, 339 So.2d 1382 (Miss. 1976). In these cases there is no death sentence of one not physically acting or assisting in the killing, as is the situation here. Neither is it true that there was one planned and executed in more deliberate fashion than the one now before us.
In the companion case, Jones v. State, 381 So.2d 983 (Miss. 1980), the majority of this Court affirmed the death sentence and mandated its execution. An examination of the appeal record in that case reveals these differences between that case and this one:
(1) The district attorney's argument before the jury wherein he made a comment that probably bore upon appellant Jones' failure to testify.
(2) The Jones jury, after 2 1/4 hours of deliberation, reported to the Court that it could not reach a unanimous verdict. "What shall we do?" Thereupon, the Court was recessed until the next morning.
(3) Jones was a borderline to mentally retarded man.
(4) There was no confession in that case.
(5) No eye witness testified in that case.
(6) J.D. (the co-indictee with this appellant and Jones), took a sentence for a lesser crime and for a shorter incarceration and was one of the main witnesses for the state.
*1013 These infirmities in the Jones trial are not present here, and we consider that guilt here present is much more strongly established here than in Jones' case.
Considering the crime and the appellant, we do not conclude that the death sentence is excessive and disproportionate to that imposed in similar cases.
Hence, we fail to find merit in any of the asserted errors.
Under Mississippi Code Annotated, section 99-19-105 (Supp. 1978), automatic appellate review of this case is necessary on our part, and we have reviewed the record on the errors assigned and in search of errors not assigned.
In doing so, we have considered the punishment prescribed by the sentencing phase jury, and have next above recorded our view and conclusions relative thereto. We find the death sentence not to have been imposed under the influence of passion, prejudice, or any other arbitrary factors; that the evidence supports the jury's finding that the aggravating circumstances are not outweighed by the mitigating circumstances, and that the death sentence is not excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.
The jury's verdict signed by the foreman thereof is as follows:
We the jury unanimously find from the evidence and beyond reasonable doubt that the capital murder in this case was committed while the defendant was engaged in the commission of the crime of robbery; that the capital offense was especially heinous, atrocious and cruel; and that the defendant has been previously convicted of a felony involving the use or threat of violence to the person. We further find unanimously from the evidence and beyond a reasonable doubt that after weighing mitigating circumstances and the aggravating circumstances, one against the other, that the mitigating circumstances do not outweigh the aggravating circumstances and that the defendant should suffer the penalty of death.
We affirm the conviction and sentence and set the 19th day of March, 1980 as the date for execution of the sentence.
AFFIRMED.
PATTERSON, C.J., SMITH, and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.