# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-KA-00145-SCT

*DANIEL JOE MARTIN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/12/2005 |
| TRIAL JUDGE: | HON. W. ASHLEY HINES |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAVID LEE BREWER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL: BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | JOYCE IVY CHILES |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/13/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DIAZ, P.J., DICKINSON AND LAMAR, JJ.**

**DICKINSON, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1.     The defendant was convicted of felony child abuse based on the State's contention that he punished a child for a potty-training accident by holding her in scalding water until her feet were burned.  We affirm.

### BACKGROUND FACTS AND PROCEEDINGS

¶2.     On August 22, 2003, Taci Glidden, who was two years and nine months old, was left in the care of her mother's live-in boyfriend, Daniel Joe Martin, while her mother and

Martin's mother (who also lived in the household) went to work. In the later afternoon, Taci had an accident in her training pants, and Martin took her to the bathroom to clean her up.

¶3.     Martin claims that, as he began running water in the bath tub to clean Taci up, Daniel Jr. began crying in another room. Martin says he told Taci to get into the tub and wash off. Martin claims that a few moments later, Taci emerged from the bathroom, and her feet were extremely red. Martin says that when he realized the child had been burned, he attempted to soothe her feet in a bowl of cold water.

¶4.     Later that evening, when Taci's mother, Amy Preston, and Martin's mother, Brenda Ray, returned from work, Martin says that he informed them about the incident. By that time, he claims that the child's feet were much worse, and the two women took Taci to the hospital. From Greenwood-Leflore Hospital, the child was sent to the Greenville Burn Center where she remained for seven days. The incident was reported to law enforcement, and Martin was indicted for felony child abuse.

¶5.     At trial, the State called Dr. Jeffrey Lee Hardin as an expert in the field of emergency medicine and pediatrics, with special training in the area of child abuse. Dr. Hardin testified that Taci's burns were inconsistent with the theory of accident, because she had "immersion burns" on both feet with no additional splash injuries. He also stated that "[he couldn't] imagine that an almost three-year-old child put one foot into water that was hot enough to cause a third-degree burn and then voluntarily swung the other foot into that water." He further testified that the sock-like burns on Taci's feet and legs evinced a pattern typical of intentional abuse.

2

¶6.    Martin was found guilty of felony child abuse and was sentenced to the maximum twenty years in the custody of the Mississippi Department of Corrections. On appeal, Martin raises four assignments of error: (1) the circuit court erred in failing to grant his motion for a directed verdict under the *Weathersby* rule; (2) the circuit court erred by allowing the jury to learn of a youth court adjudication that Taci and Daniel were abused and neglected; (3) the circuit court erred in allowing evidence of Martin's previous driving-under-the-influence conviction (DUI); and (4) the verdict was against the overwhelming weight of the evidence.

**ANALYSIS**

**I.**

¶7.    In 1933, this Court decided *Weathersby v. State*, 165 Miss. 207, 209 (1933), which held that where "the defendant or the defendant's witnesses are the only eyewitnesses to a *homicide*, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the State, or by the physical facts or by the facts of common knowledge." *Id.* at 209 (emphasis added). This holding has become known as the *Weathersby* rule.

¶8.    Martin argues that he was entitled to a jury instruction incorporating the *Weathersby* rule. However, the case against Martin does not involve a homicide, and the *Weathersby* rule is applicable only in homicide cases. *See Brown v. State,* 907 So. 2d 336, 340 n. 1 (Miss. 2005) (holding *Weathersby* rule inapplicable to conviction for drug possession). This assignment of error is without merit.

**II.**

¶9.     Martin next contends that the trial judge committed reversible error by allowing into evidence a prior youth court adjudication that Taci and Daniel Jr. were abused and neglected children.  We need not analyze the admissibility of such evidence in this case because the issue was initiated by Martin's counsel during his cross-examination of social worker Katrina McClain:

> Q:     [d]id your office open up a case on Taci?
> A:     Yes, sir, we did.
> Q:     Because of this?
> A:     Yes.

He then proceeded to question McClain about the status of the case, inquiring:

> Q:     Okay. And is the case still open?
> A:     No, sir.
> Q:     Okay. When was it closed?
> A:     I can't recall. Must be sometime early part
>        of this year. . .
> Q:     Okay. And did you – did your office feel
>        that because the case was closed that there was
>        no longer any threat from Daniel to Taci?
> A:     I can't answer that right now.
> Q:     Well, it's either yes or no.

¶10.    On re-direct, the prosecutor asked McClain:

> Q:     Okay. So what you're saying is – and if you need to
>        refresh your memory – was the child adjudicated an
>        abused child?
> A:     Yes.

¶11.    It is well-settled that a defendant who "opens the door" to a particular issue runs the risk that collateral, irrelevant, or otherwise damaging evidence may come in on cross-examination. ***Murphy v. State***, 453 So. 2d 1290, 1294 (Miss. 1984) (*citing **Reddix v. State***,

4

381 So. 2d 999 (Miss. 1980). A defendant cannot complain on appeal concerning evidence that he himself brought out at trial. *Fleming v. State*, 604 So. 2d 280, 289 (Miss. 1992). Stated another way, "if the defendant goes fishing in the state's waters, he must take such fish as he catches." *Reddix*, 381 So. 2d at 1009.

¶12. In this case, the subject of the youth court adjudication was initiated by Martin's counsel. Thus, the trial court did not err in allowing the state to continue this line of questioning.

### III.

¶13. Martin complains that he was prejudiced by the admission of evidence concerning a past DUI incident. During the State's questioning of Amy Preston, the following dialogue took place:

> Q: Back in August of 2003 would you describe
> for the jury Daniel's physical condition.
> A: 2003. Well, in June of 2003 he was in a car wreck,
> a van wreck, and he was messed up pretty bad. He was
> in the hospital for ten days. He had fractured ribs,
> fractured pelvis, his hip and his knee was busted up
> pretty bad, and he could barely walk. . .
> Q: In August can you tell me what his physical
> limitations were then.
> A: He would walk, but he had to hold onto things
> to balance, you know, kind of balance and keep
> himself up, but he could walk.
> Q: And could he kneel?
> A: No.

¶14. After Martin's counsel cross-examined Preston, the following took place during the State's re-direct:

5

Q:      You indicated that in June, 2003, Daniel Martin's
        physical condition was poor; is that correct?
A:      Yes.
Q:      And you say he was in an accident?
A:      Yes, sir.
Q:      What happened?
A:      He was in a bad car wreck. He was hit on the highway.
Q:      *Was this not a DUI where he like to have killed*
        *himself and the other person?*

¶15.   Whereas the prosecutor's previous comments regarding the youth court adjudication were appropriate to counter the defense's suggestion that the Department of Human Services, (DHS) had not found Martin responsible for the burns, the statement concerning this DUI incident clearly was inappropriate. Nothing in the record justified any reference to a previous DUI incident in which someone was almost killed. However, the trial court sustained the defense's objection to this line of questioning, and defense counsel neither requested a limiting instruction, nor moved for a mistrial. We consistently have held that issues not presented to the trial court are deemed waived and may not be raised for the first time upon appeal. **Tate v. State**, 912 So. 2d 919, 928 (Miss. 2005); **Wilcher v. State**, 479 So. 2d 710, 712 (Miss. 1989).

¶16.   It is not per se prejudicial for a jury to hear an isolated instance of a crime or bad act during the course of a trial. **Brown v. State**, 890 So. 2d 901, 913 (Miss. 2004). Thus, the burden is properly on defense counsel to seek a mistrial or ask for a limiting instruction. **Id**. We find this issue is without merit.

**IV.**

¶17.   In deciding whether a jury verdict is against the overwhelming weight of the evidence, this Court will disturb a jury verdict only when it is so contrary to the overwhelming weight

6

of evidence that allowing it to stand would sanction an unconscionable injustice. ***Taggart v. State***, 957 So. 2d 981, 987 (Miss. 2007). Thus, we must examine the record for evidence sufficient to meet this burden.

¶18. Katrina McClain, a social worker with DHS, testified that, upon asking the child what happened, Taci said that "Daddy did this." McClain also read into evidence a letter DHS had received from Dr. Love, the treating physician at Greenwood-Leflore Hospital, which stated that the burns were "suspicious for an emerged burn. Potentially the child was forced in the water because they are circumferential around both ankle[s] in a stocking glove fashion, but it is impossible to say they happened the way the family described or not. Just suspicious for potential forced burn of the feet." Dr. Jeffrey Hardin, an expert in the field of emergency medicine and pediatrics with special training in child abuse, opined that Taci "was forcibly placed in the water and held there." He further concluded that "when you consider the child's age, the extent of her burns and the distribution of her burns. . . this is an obvious case where she was forcibly placed in the water, and it's consistent, in my opinion, with child abuse."

¶19. Based upon this testimony, we cannot say that the conviction was against the overwhelming weight of the evidence. As we have stated before, "Any conflicts between witnesses' accounts are properly weighed by the jury. When the evidence is conflicting, 'the jury will be the sole judge of the credibility of witnesses and the weight and worth of their testimony'" ***Jenkins v. State***, 947 So. 2d 270, 278 (Miss. 2006). Because the jury's verdict was not against the overwhelming weight of the evidence, we must defer to the jury's decision on this issue.

7

## CONCLUSION

¶20.   For the reasons stated above, Martin's conviction and sentence are affirmed.

¶21.   **CONVICTION OF FELONY CHILD ABUSE AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS,  AFFIRMED.**

**SMITH, C.J., WALLER AND DIAZ, P.JJ., EASLEY, CARLSON, GRAVES, RANDOLPH AND LAMAR, JJ., CONCUR.**