McNeer *v.* State

No. 40099          May 28, 1956          87 So. 2d 568

*Bell & McBee, Means Johnston,* Greenwood, for ap-
pellant.

310

*John H. Price, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

GILLESPIE, J.

Appellant, Don McNeer, was jointly indicted with J. E. Brownlow for the murder of James Elbert Vance. Appellant was separately tried and convicted of manslaughter and sentenced to serve ten years in the state penitentiary.

The jury was justified in finding the facts as next stated.

Four young men, James Elbert Vance, Bernard Blakeley, Pat Blakeley, and Lee Clanton Frazier, sometimes referred to as the Grenada County boys, ranging in age from 19 to 21 years, went to a beer joint known as the Red Robin, and located in Carroll County, to get beer and soft drinks. They had all previously had one or two beers which they had drunk elsewhere, but none were shown to have been drunk. When they arrived at the Red Robin, they took seats in a booth and ordered three beers and a soft drink. Appellant, age 20, and J. E. Brownlow, age 18, cousins, were in the Red Robin when the Grenada County boys arrived. They had been drinking, and were then drinking, gin. After being seated, Vance asked Brownlow in a friendly way as to whether they knew each other, and Brownlow replied, also in a friendly manner. In fact, the two sets of boys had never seen each other. Immediately after this brief conversation between

Vance and Brownlow, appellant walked over to where Vance was sitting and asked Vance, "You are talking smart to me, ain't you?", to which Vance replied that he was not talking to appellant. Appellant then slapped Vance on the side of the head; Vance partly raised up and hit appellant, knocking him against a counter. Appellant then pulled out of his pocket a Japanese switch-blade knife that ejected the three-inch blade by pressing a button. Appellant then cursed the Grenada County boys, calling them yellow-bellied, low bred, and other kinds of sons-of-bitches. The owner of the Red Robin came out with a blackjack and stopped the trouble and prevailed upon appellant to put up his knife. The Grenada County boys told appellant they did not want any trouble and again sat down at their booth. The owner returned to the rear of the place, after which appellant again pulled his knife and went over to the booth and said to Pat Blakeley, who was wearing an army shirt, "I want to whip this damn soldier." Pat Blakeley declined appellant's offer to fight, whereupon appellant began calling Pat Blakeley a yellow-bellied son-of-a-bitch. Then appellant hit Blakeley in the eye. Blakeley did not fight back. The Grenada County boys started to leave, but appellant met them with his drawn knife and asked them where they were going, and upon being told that they were going home, appellant said, "You are not going no damn place." This was the second time the Grenada County boys had tried to leave. The owner came out again and told appellant to leave the boys alone and let them go, and while the owner was engaging appellant, the Grenada County boys left the Red Robin and got in their car. Bernard Blakeley got under the wheel, Vance on the right front seat, Pat Blakeley on the left rear seat, and Frazier on the right rear, but before Vance could close the right front door, appellant got in the car with his knife drawn and placed his back against the windshield and put his knife point against Vance's stom-

ach and told the Grenada County boys they weren't going "any damn place." The boys told appellant that they did not want any trouble, but appellant cursed them again and said he was going to "teach you folks from Grenada County and Montgomery County to stay out of Carroll County." They tried to leave and each time Bernard Blakeley would reach for the car switch, appellant would take the knife from Vance's stomach and put it against Bernard's stomach and again tell them that they were not going "no damn place." The Grenada County boys tried to make friends and begged appellant to let them go, but appellant refused to do so. Brownlow was standing by the car doing nothing. Appellant ordered him to search the car. Brownlow felt in the car and found a jar containing a small quantity of corn whiskey. Appellant forced all four of the boys to take a drink of the whiskey. Appellant continued to abuse and curse the Grenada County boys for fifteen to thirty minutes. Brownlow had said little except that he said he did not like anyone named Blakeley. Appellant opened the glove compartment of the car and took therefrom a small knife and put it in his pocket. Finally, appellant called them other kinds of sons-of-bitches, and demanded they fall out and fight. Vance told appellant he would not fight him because of the knife, whereupon appellant handed his open knife to Brownlow, who was standing by the right door of the car, and grabbed Vance to drag him out of the car with the announced intention of "stomping the hell" out of him. Vance kicked appellant loose and told Bernard Blakeley, "Let's go." While appellant was partly on the ground and hanging on the door, Bernard Blakeley started the car backward to get away from the building in order to be able to go forward and leave. As the car was backing up a short distance, Brownlow said, "Hell, no, you can't do that," at about the same time appellant, while hanging on the door, said, "Kill him," and Brownlow ran in and stabbed Vance with the knife

appellant had handed him. The Grenada County boys left. Vance had been stabbed in the heart and died in a few minutes. Appellant lost his right shoe and thought it was in the Grenada County boys' car. He and Brownlow went to Winona in search of them, and not finding them, went back to the Red Robin where they found the shoe in the back of their own car. While at the Red Robin this time, appellant told the wife of the owner that if anyone asked if he had been there to tell them he had not. Appellant and Brownlow then started to Greenwood and wrecked their car when they hit a telephone pole. When arrested at 2:00 A.M. that same night, appellant was asleep at home. The deputy sheriff woke him and appellant asked "what the hell" it was all about. Appellant was told that it was a serious matter; that he was charged with murder. Appellant asked who, and the sheriff said James Vance had been killed. Appellant replied, "I haven't killed anybody, but I am glad the son-of-a-bitch is dead." Appellant was drunk when arrested.

Appellant and Brownlow had a different version of the events leading up to the killing and the manner in which it occurred, but the version stated was fully sustained by the evidence.

Appellant contends that the State erroneously proceeded upon the theory that the defendants entered into a conspiracy to murder Vance, and in this connection, says that the court erred in granting the State several instructions, including the following:

"The court instructs the jury for the State, that where parties combine to commit a crime, the law imputes guilt of each to all engaged and pronounces all guilty of any crime committed by any in execution of common purpose as one of its natural and probable consequences, notwithstanding none of the parties intended at the outset to do the particular thing constituting the crime."

The evidence was sufficient for the jury to find that appellant and Brownlow combined to commit an

affray such that bloodshed would be a probable incident, and that the homicide ensued while they were thus engaged in illegal proceedings. ■■ Appellant evinced a purpose to unlawfully detain the Grenada County boys, to assault them with the knife, to illegally search the car, and engage them, or at least one of them, in a fight. Brownlow was not as active a participant as appellant, but he was acting in concert with appellant and took an active part in the illegal search of the car; Brownlow's statement and use of the knife in the killing of Vance warrants the inference that appellant and Brownlow were acting in concert with a common design in committing the crimes upon the Grenada County boys prior to the homicide, and that the homicide was an incident to the execution of the common design. Under such circumstances, both are criminally liable for the homicide. 14 Am. Jur., Criminal Law, Sec. 80.

■■ The State's theory that appellant aided and abetted in commission of the crime is not inconsistent with the theory of a common design to commit a crime out of the execution of which the homicide ensued. We do not understand that the State contended that there was a conspiracy to murder Vance; nor was conspiracy mentioned in the instructions.

■■ Aiding and abetting in the commission of a crime involves community of unlawful purpose at the time the act was committed. 22 C.J.S., Criminal Law, Sec. 87. "Aiding and abetting involves some participation in the criminal act, in furtherance of the common design either before or at the time that the criminal act is committed." Ibid, Sec. 88. The common intention may arise on the spur of the moment. Ibid., Sec. 87.

■■ The instructions of which appellant complains were proper under the evidence and consistent with the State's theory that appellant was guilty as an aider and abettor.

It is contended that appellant was entitled to a peremptory instruction.

Appellant and Brownlow were together. They were cousins. Appellant was the older. They were acting in concert. Appellant's whole course of conduct was calculated to lead to a killing. He stirred up the trouble and kept it going. Just before the climax of the tragedy, he handed the open knife to Brownlow, and when it appeared that he was about to be foiled in his effort to drag Vance out of the car with the announced intention to "stomp hell" out of him, appellant called, "Kill him." Appellant's whole course of conduct was calculated to inflame and incite Brownlow to violence. Not only did appellant encourage Brownlow to violence, he affirmatively directed him to kill at a time when he knew Brownlow had the lethal weapon and was in a position to use it. Cf. Gibbs v. State, 77 So. 2d 705. Walters v. State, 218 Miss. 166, 65 So. 2d 465; Hardy v. State, 180 Miss. 177, 177 So. 911.

Appellant contends that the lower court erred in admitting the testimony of the deputy sheriff who arrested appellant, and that this testimony was highly prejudicial. The deputy testified that upon being told that he was charged with murder, and that Vance had been killed, appellant said, "I haven't killed anybody, but I am glad the son-of-a-bitch is dead." Appellant argues that the statement was neither a confession nor an admission against interest. It was not a confession, but it was admissible. The statement showed the appellant's state of mind a short time after the killing. It showed that he bore malice against Vance to the extent that he was glad he was dead. On this ground the statement was admissible. 22 C.J.S., Criminal Law, Sec. 738.

The appellant contends that it was error to refuse to grant him the following instruction:

"The court instructs the jury for the defendant that before the jury can convict the defendant, Don Mc-

Neer, each and every member of the jury panel must be satisfied beyond all reasonable doubt that immediately prior to or at the time J. E. Brownlow cut the deceased, James Vance, that the defendant, Don McNeer, said 'Kill him,' or words to like effect, and that said words, if uttered, aided, assisted, encouraged or induced said J. E. Brownlow to kill the deceased, James Vance. Unless this is believed beyond all reasonable doubt by each and every member of the jury panel, it is your sworn duty to find the defendant, Don McNeer, 'not guilty.'"

This instruction was properly refused on two grounds: (1) It improperly instructed the jury that it was their sworn duty to find the defendant not guilty unless each and every juror believed that appellant said "Kill him," or words to like effect, and that said words, if uttered, aided, assisted, encouraged or induced Brownlow to kill deceased. That would have required the jury to acquit if but one juror did not so believe, and would not have authorized a mistrial. (2) There was sufficient testimony to go to the jury without the testimony that appellant said "Kill him."

The State's evidence was amply sufficient for the jury to find that appellant was guilty beyond a reasonable doubt, and we find no reversible error.

Affirmed.

*Roberds, P. J.,* and *Lee, Arrington* and *Ethridge, JJ.,* concur.