**Larry JONES, Plaintiff,**

v.

**Morris THIGPEN, Commissioner, Mississippi Department of Corrections, et al., Defendants.**

**Civ. A. No. S81–0109(R).**

United States District Court, S.D. Mississippi, S.D.

Jan. 27, 1983.

---

James L. Robertson, Oxford, Miss., Mary Carolyn Ellis, for plaintiff.

Wm. S. Boyd, III, Jackson, Miss., for the state of Miss.

## OPINION

DAN M. RUSSELL, District Judge.

### I. BACKGROUND

On December 2, 1974, Arthur Weinberger was killed in his place of business in Biloxi, Mississippi. Three men, Willie Reddix, J.D. Reddix, and Larry Jones, were indicted for capital murder pursuant to Miss.Code Ann. § 97–3–19(2)(e) (1972). The indictment charged that these three men murdered Arthur Weinberger while they were engaged in the commission of a felony—armed robbery. Larry Jones entered a plea of not guilty to the indictment.

The case was called for trial in the Circuit Court of Harrison County and on March 19, 1975, Jones was found guilty of capital murder. He appealed to the Mississippi Supreme Court where the case was reversed and remanded with instructions to follow the procedure outlined in *Jackson v. State,* 337 So.2d 1242 (Miss.1976). *See Jones v. State,* 342 So.2d 735 (Miss.1977).

On remand, Jones was brought to trial and on December 14, 1977, the jury returned a verdict of guilty to the crime of capital murder and on the following day, the same jury sentenced him to death by lethal gas.

On December 16, 1977, Jones filed a motion for a new trial; said motion was overruled and an appeal to the Mississippi Supreme Court was timely perfected. The court affirmed the conviction and sentence, *Jones v. State,* 381 So.2d 983 (Miss.1980), and subsequently denied Jones' petition for rehearing.

Jones then filed a petition for writ of certiorari in the United States Supreme Court and on November 17, 1980, the petition was denied. *Jones v. Mississippi,* 449 U.S. 1003, 101 S.Ct. 543, 66 L.Ed.2d 300 (1980).

On March 3, 1981, Jones filed a motion for leave to file a petition for a writ of error coram nobis or habeas corpus in the Mississippi Supreme Court. On April 1, 1981, the petition was denied.

Thereafter, Jones filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### II. STANDARD OF REVIEW

28 U.S.C. § 2254 requires exhaustion of all state remedies. A federal court is barred from addressing claims in a habeas petition which were not the subject of timely objection under the state's procedural rules. Specifically, if a defendant is required by state law to raise a timely challenge to a particular point and fails to do so he is barred from raising the claim in a federal habeas proceeding absent a showing of "cause" excusing his double procedural default and "actual prejudice" resulting

from the errors of which he complains. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). *See also Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

The petitioner argues that the failure of a defendant to preserve trial error does not preclude appellate review of claims based on such error if the state defendants met such claims on the merits or if the state court of review did not rely upon such procedural objection in denying the claim. In support of this position, the petitioner cites *Miller v. Estelle,* 677 F.2d 1080, 1084 (5th Cir.1982), wherein the court stated:

> The government next argues that consideration of the merits of Miller's federal claim is barred under *Wainwright v. Sykes* . . . for failure to contemporaneously object and seek relief from the conduct of which he complains. We note, however, that the denial of habeas corpus relief at the state level was not based upon appellant's failure to timely object, but, rather, was a decision on the merits. It is well settled that a federal court is not barred from considering the merits of a ground for relief by reason of the fact that petitioner failed to make a contemporaneous objection, where the state courts did not rely upon the contemporaneous objection rule in denying relief. . . . This principle applies irrespective of how briefly or summarily the state court treats the merits of a petitioner's claim.

*Id.* (footnote and citations omitted).

In the denial of petitioner's motion for leave to file a petition for writ of error coram nobis and/or writ of habeas corpus, the Mississippi Supreme Court's form entry on the minutes stated:

This cause this day came on to be heard on Motion for Leave to File Petition for Writ of Error Coram Nobis and/or for a Writ of Habeas Corpus and this Court having sufficiently examined and considered the same and being of the opinion that the same should be denied doth order that said Motion be and the same is hereby denied.

Jones contends that this summary denial was a decision on the merits and one in which the state supreme court did not rely upon the contemporaneous objection rule in denying his requested relief. Conversely, the state argues that this is not such a case. No findings of fact, conclusions of law, or any matters relative to the merits of the petition were considered by the supreme court. The state contends that *Miller* and the cases cited therein were cases where various state courts addressed a particular constitutional question before it resulted in a waiver of the "waiver defense".

■ The Fifth Circuit has recently held that "failure to state whether a writ of coram nobis was denied on the merits or for procedural default creates a presumption that it was considered on the merits and does not bar federal habeas review." *Bell v. Watkins,* 692 F.2d 999 at 1006 (5th Cir. 1982). On the basis of *Bell,* the Court concludes that the supreme court did not rely upon state procedural grounds in denying the petitioner's requested relief and therefore, the Court is not precluded from reviewing the petitioner's claims.

### A. *Witherspoon* Issues

During voir dire, four prospective veniremen indicated that they harbored conscientious scruples against the death penalty. These jurors were then questioned in an effort to determine the extent of their opposition to the death penalty and to what degree it would influence them in any future deliberations.[1] Jones contends that he

---

1. BY THE COURT: Ladies and gentlemen, the charge against the Defendant in this case is that of capital murder. You've been summonsed [sic] here as potential jurors on the charge. If the jury should find the verdict of guilty, a second hearing will be held to determine whether or not the Defendant should re-

ceive the sentence of death. or life imprisonment. I therefore ask you, ladies and gentlemen, if any of you have any conscientious scruples against the infliction of the death penalty when the law authorizes it in proper case and where the death penalty warrants it. Special

was denied his right to a fair and impartial jury under the sixth and fourteenth amendments as construed and applied in *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770,

panel number one? Do any of you have conscientious scruples against the death penalty?

(To which there was no response.)

BY THE COURT: Number two?

(To which there was no response.)

BY THE COURT: Regular panel number one? I think Mrs. Thorne, you indicated earlier—do I understand your earlier response to mean that you do have conscientious scruples against the infliction of the death penalty when the—

JUROR THORNE: —I do.

BY THE COURT: Can you—since you have answered that you do have scruples, I ask you whether or not you can, nevertheless, follow the testimony of the witnesses and the instructions of the Court as to the law and returning a verdict of guilty, even though a verdict of guilty could potentially result in the death penalty, if you, being a judge of the evidence, are convinced of the guilt of the Defendant and the circumstances warrant such a verdict?

JUROR THORNE: I couldn't do it.

BY THE COURT: O.K., the law requires that I excuse you, Mrs. Thorne. Thank you for being candid.

BY MR. MORRIS: Your Honor, for the record, can we note an exception?

BY THE COURT: Will the reporter note an objection to that excusal?

\*   \*   \*   \*   \*   \*

WHEREUPON the Court continued to voir dire the jury panel, when the following transpired:

BY THE COURT: All right, Mrs. Thorne, in view of the responses from some of the other jurors, let me ask you to come forward and have a seat again.

(Mrs. Thorne was returned to the jury panel.)

BY THE COURT: There appears to be some disagreement as to your response to the Court. We have, as I've indicated, two potential stages to this trial. One in which the jury decides whether or not this man is, in fact, guilty of the crime with which he is charged, which is capital murder. If the jury should find that he is, in fact, guilty of capital murder, a second stage of the trial must be held in which the jury decides whether or not the Defendant should suffer death or life imprisonment. As I understood— let me ask you at this time—you've indicated that you do have conscientious scruples against the death penalty. Would those conscientious scruples prevent you from fairly and objectively considering the evidence in the first stage, in determining whether or not the Defendant is guilty of capital murder?

JUROR THORNE: I think they would. I think my emotions would control my decision.

BY THE COURT: O.K., well, that's the way I understood you the first time. So you could not fairly and objectively consider the question of guilt?

JUROR THORNE: I don't believe I could. I've never had the experience but I just don't think I could.

BY THE COURT: O.K., I'm satisfied and you will be excused, Mrs. Thorne. Thank you.

BY MR. MORRIS: Your Honor, with all due respect, I'd like to make the same exception.

BY THE COURT: You may note an objection.

\*   \*   \*   \*   \*   \*

WHEREUPON the Court continued to voir dire the jury panel, during the course of which, the following transpired:

BY THE COURT: I think we had some other hands on that panel. Mrs. Breaux, I think you—

JUROR BREAUX: —I don't think I could—I could actually say one way or the other. I wouldn't do any good because I wouldn't be able to make any decision whether he is or isn't guilty.

BY THE COURT: You could not decide whether or not he is guilty?

JUROR BREAUX: No, sir. No, sir.

BY THE COURT: Is that what you are saying because I—

JUROR BREAUX: —I don't think I could make that decision, whether he is or isn't guilty of what they say he's done.

BY THE COURT: All Right, simply the fact that you, in the second hearing, can determine whether or not the death penalty or life imprisonment would be inflicted would prevent you from objectively making the decision in the first hearing, as to guilt?

JUROR BREAUX: I couldn't make it.

BY THE COURT: O.K., the law would require that I excuse you, Mrs. Breaux. Thank you. Were there any other hands on jury number one of the regular panel? I see a rather uncertain hand, Mrs. Hover. Are you scratching your ear or are you raising your hand?

JUROR HOVER: I don't know that I could, either. I mean I just wouldn't want to feel like that, you know, somebody's in prison or—or would be committed to an institution, I mean, because I said yes or no.

BY THE COURT: Well, nobody's here to tell you that the decision in this case won't be a grave and difficult one. I think we all understand that. I think we have to keep the two questions in perspective. The first question, Mrs. Hover, is do you have any conscientious scruples against the infliction of the death penalty?

JUROR HOVER: I don't but I mean, I don't know that I would vote for it. I mean, you know, if somebody else committed somebody else to a sentence, it wouldn't bother me, but I mean, for me to do it, I just have different feelings.

BY THE COURT: Well, the next question is— keeping in mind the way that you feel, would your feelings prevent you from fairly and objectively determining from the evidence and the

20 L.Ed.2d 776 (1968), by the exclusion of these four veniremen.

■ Through *Witherspoon* and its progeny, the Court has established that a juror may not be challenged for cause based upon his *general objections* to capital punishment. However, a venireman may constitutionally be excluded if: (1) he would automatically vote against the death penalty regardless of the facts adduced at trial; or (2) his attitude toward the death penalty would prevent him from making an impartial decision as to the defendant's guilt. *Witherspoon v. Illinois,* 391 U.S. at 522–23 n. 21, 88 S.Ct. at 1777 n. 21; *Adams v. Texas,* 448 U.S. 38, 45, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581 (1980). Further, the *Witherspoon* test is two pronged; there is no requirement that both prongs be met prior to exclusion from a venire. *Williams v. Maggio,* 679 F.2d 381, 384 (5th Cir.1982).

■ In analyzing the excluded jurors' responses, Juror Thorne stated unequivocally that her scruples against the death penalty would prevent her from objectively considering the question of the defendant's guilt. This response meets the second criteria adduced in *Witherspoon* and the Court concludes that Juror Thorne was properly excluded.

■ Likewise, Juror Breaux stated unequivocally that her ability to render a verdict as to guilt would be directly affected by the knowledge that this verdict could result in the imposition of the death penalty. To this end, Juror Breaux was properly excused.

■ Jurors Hover and Kornman stated that they could not inflict the death penalty. These personal convictions made them ineligible to serve on a capital jury, and accordingly, they were properly excused.

■ The trial court followed the directive of *Witherspoon* and eliminated only those prospective jurors who indicated that their conscientious scruples against the death penalty would prevent them from properly considering the issue of the defendant's guilt in accordance with their oath. The Court concludes that there has been no violation of *Witherspoon.*

### B. Refusal of Jury's Verdict

During the sentencing phase and after the jury deliberated for over two hours, a

---

law whether or not the Defendant is guilty of capital murder or a lesser crime?

JUROR HOVER: I've got to—I don't think I could do it. I wouldn't want to do it.

BY THE COURT: None of us want to make a grave decision like that but would your feelings prevent you from being fair and objective in deciding whether or not the Defendant is guilty of capital murder or a lesser crime?

JUROR HOVER: I just—I just don't want to be on it.

BY THE COURT: Well, I'm asking one question and you are giving me another answer—

JUROR HOVER: —I know you are but, I mean, I just don't want to be on it. I mean, you want me to be honest, too, so . . .

BY THE COURT: I think it's necessary. We appreciate what you are telling us right now. It's informative but the question that I have to ask you is one that the law requires and I am certain the parties are going to consider what you are telling us right now, but in order for the law—to require me to excuse you, you would have to tell me that you cannot fairly and impartially consider the question of whether or not the Defendant is guilty of capital murder or another crime because you have scruples against the death penalty.

JUROR HOVER: Well, I just—I'd have to say, yes, then. I'd have scruples against the punishment.

BY THE COURT: All Right, I'll have to excuse you. Thank you for being candid. Mr. Kornman?

JUROR KORNMAN: I don't believe I could inflict the death penalty, either.

BY THE COURT: I am going to ask you another question. You told me that you cannot inflict the death penalty. Would that fact prevent you from fairly and objectively determining whether or not the Defendant is guilty of capital murder or a lesser crime?

JUROR KORNMAN: Yes, I think it would.

BY THE COURT: You feel like, again, that would prevent you from objectively considering the evidence as it is presented, in deciding whether or not he's guilty of capital murder or a lesser offense.

JUROR KORNMAN: Yes, sir, I do.

BY THE COURT: All right, Mr. Kornman, I will have to excuse you, sir. Thank you.

BY MR. MORRIS: Your Honor, I want to—if I may, just have a continuing—for the record—exception, for purposes of what we discussed.

BY THE COURT: All right.

TR. Vol. 1, pp. 160–66.

note was sent to the court which stated that "We the jury cannot come to a unanimously [sic] decision—what shall we do?"[2] The judge, in response, stated "Ladies and Gentlemen . . . it's been a long day . . . and it's getting a little bit late into the night so . . . Court is going to recess until 9 tomorrow morning."[3] Jones contends that the judge should have imposed a life sentence pursuant to the provisions of Miss.Code Ann. § 99–19–103 (Supp.1982).

Miss.Code Ann. § 99–19–103 (Supp.1982) states that if the jury cannot agree, within a reasonable time, as to punishment, the judge shall dismiss the jury and impose a life sentence. § 99–19–103, however, authorizes the trial judge to return the jury for further deliberation if he thinks it likely that a verdict may be reached. *Sharplin v. State,* 330 So.2d 591, 596 (Miss.1976).

A similar incident occurred in *Jordan v. State,* 365 So.2d 1198, 1206 (Miss.1978), when the jury came into court and announced that they could not agree as to punishment. The judge directed that they deliberate further. The Mississippi Supreme Court held that no error had occurred since the jurors had not announced that they could not reach a verdict if given additional time.

■ In the case sub judice, the jury simply requested further instruction. They did not indicate that they were hopelessly deadlocked, and the trial court properly used its discretion in recessing for the night after a long day. As the state supreme court concluded, "[w]e do not consider the note to be the equivalent of a verdict and therefore conclude this assignment lacks merit." 381 So.2d at 992.

### C. Failure to Instruct on a Lesser Included Offense

At the conclusion of the guilt phase of Jones' trial, the only offense submitted to the jury was that of capital murder. Jones argues that the fourteenth amendment was violated because the jury was not permitted to consider a lesser included offense. The state argues that Jones is barred from raising this issue on habeas due to his failure to contemporaneously request such an instruction.

The Mississippi Supreme Court has explicitly held that "the trial judge shall not be put in error for his failure to instruct on any point of law unless specifically requested in writing to do so." *Newell v. State,* 308 So.2d 71, 78 (Miss.1975). However, the Fifth Circuit has interpreted the Mississippi Supreme Court's opinion in *Culberson v. State,* 379 So.2d 499 (Miss.1980), *cert. denied,* 449 U.S. 1103, 101 S.Ct. 903, 66 L.Ed.2d 831 (1981), as expressly waiving Mississippi Supreme Court Rule 42's contemporaneous objection requirement in capital cases. *Bell v. Watkins,* 692 F.2d 999 at 1004 n. 5 (5th Cir.1982). Therefore, no procedural bar exists which precludes the Court from reviewing the petitioner's claim.

In *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), the Court held that a lesser included offense instruction should be given if the evidence would permit a jury rationally to find the defendant guilty of the lesser offense and acquit him of the greater. The Court has since emphasized that there is no due process violation unless there is some evidence to support an instruction on the lesser included offense. *Hopper v. Evans,* —— U.S. ——, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982).

■ The Court finds that the trial judge's instructions to the jury properly stated Mississippi law. Miss.Code Ann. § 97–3–19(2)(e) (Supp.1982) designates capital murder as a killing "done with or without design to effect death, by any person engaged in the commission of the crime of . . . robbery . . . ." Thus, any murder committed during the course of a robbery is capital murder. Since it was proved by the state that Jones committed a robbery, any murder committed had to be capital. *See Bell v. Watkins,* 692 F.2d at 1004–05 (5th Cir.1982). Therefore, the trial court's failure to give a lesser included offense instruction was proper.

---

2. TR. Vol. 4, p. 743.

3. TR. Vol. 4, pp. 741, 742.

## D. Jones' Death Sentence Is Excessive and Unconstitutional

The petitioner challenges the imposition of the death sentence in his case on the basis of the recent decision of *Enmund v. Florida*, —— U.S. ——, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982).

In *Enmund*, an aged couple was murdered during the commission of a robbery. Enmund and two others were indicted for the first-degree murder and robbery of the couple. The jury found Enmund and a co-defendant guilty and in the sentencing hearing recommended the death penalty for both defendants. On appeal, the Florida Supreme Court held that the record supported no more than an inference that Enmund was the person driving the getaway car, waiting in the car on the side of the road to help the robbers escape. Under Florida law, this made Enmund a constructive aider and abettor and therefore, a principal in first-degree murder upon whom the death penalty could be imposed. This fact alone supported the verdict of murder in the first-degree under Florida's felony murder statute.

The Supreme Court reasoned that while robbery is a serious crime, it is not a crime "so grievous an affront to humanity that the only adequate response may be the penalty of death." —— U.S. at ——, 102 S.Ct. at 3377 (quoting *Gregg v. Georgia*, 428 U.S. 153, 184, 96 S.Ct. 2909, 2930, 49 L.Ed.2d 859 (1976)). The Court held that the focus must be on this defendant's culpability, "for we insist on 'individualized consideration as a constitutional requirement in imposing the death sentence.'" *Id.* —— U.S. at ——, 102 S.Ct. at 3377 (quoting *Lockett v. Ohio*, 438 U.S. 586, 605, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973 (1978)).[4] The Court held that the imposition of the death penalty is cruel and unusual punishment under the eighth amendment in the absence of proof that the defendant killed, attempted to kill, or intended to kill.

In applying *Enmund* to the case sub judice, the Court finds that the petitioner's death sentence must be vacated. There is nothing in the verdict of the jury that evidences a finding that Larry Jones killed, attempted to kill, or intended to kill the deceased. The Mississippi Supreme Court recognized this absence and stated:

> Appellant next contends, "The record does not expressly show that this appellant was actively engaged in an assault on the victim in the course of the robbery set out by all the evidence in the record." We agree the record does not conclusively establish which of the two co-felons, Willie Reddix or Larry Jones, the appellant, actually wielded the blows causing Weinburger's [sic] death. However, doubt concerning the precise role of the appellant in the homicide does not upset the jury's verdict. The indictment alleges that Larry Jones, together with his co-indictees Willie Reddix and J.D. Reddix, participated in an armed robbery which resulted in the death of Arthur Weinburger [sic], a human being. The statutory subsection proscribing appellant's conduct, Mississippi Code Annotated section 97–3–19(2)(e) (1972), appears in the indictment. It designates as capital murder a killing "done with or without any design to effect death, by any person engaged in the commission of the crime of ... robbery."
>
> This language renders the factual question of which of two co-felons acted as the efficient cause of the death unnecessary to the verdict in the guilt-determining phase. It is enough that the evidence shows the willing participation of the accused in a robbery in furtherance of which a death resulted. *See Price v. State*, 362 So.2d 204 (Miss.1978); *McNeer v. State*, 228 Miss. 308, 87 So.2d 568 (1956); *Carrol v. State*, 183 Miss. 1, 183 So. 703 (1938); *Woodward v. State*, 166 Miss. 596, 143 So. 859 (1932); *Fisher v.*

---

4. The Court noted that of the thirty-six state and federal jurisdictions presently authorizing the death penalty, only nine jurisdictions authorize imposition of the death penalty solely for participation in a robbery in which another robber takes life. Mississippi is one of those nine. *See* Miss.Code Ann. §§ 97–3–19(2)(e), 99–19–105(5) (Supp.1982).

*State,* 150 Miss. 206, 116 So. 746 (1928); cf. Miss.Code Ann. § 97–1–3 (1972).

As we have said, the evidence sufficiently demonstrates such a willing participation by the appellant. He does not challenge the indictment, nor suggest the legislature lacks the power to expose him to guilt of capital murder in the absence of proof that he had a specific intention to kill.

*Jones v. State,* 381 So.2d 983, 989 (Miss. 1980). Further evidencing such an absence is a statement made by Chief Justice Patterson in reference to the prosecutor's statement in closing argument that Arthur Weinberger was hit four times with a wrench, "I think it had the likelihood of leading the jury into the belief that the appellant struck the blows when there is no evidence in this record establishing that fact." 381 So.2d at 999 (Patterson, J., dissenting).

The state argues that *Enmund,* in effect, establishes a proximity rule and that the factual setting of *Enmund* fits the role of J.D. Reddix, the driver of the getaway car, and not that of Larry Jones, who was in the store with the other robber. This Court must reject this argument in favor of the conclusion that the issue is intent and not physical proximity.

Therefore, in the absence of a finding by the jury that Larry Jones killed, attempted to kill, or intended to kill, the Court finds that the sentence of death violates the eighth amendment.[5]

### E. Ineffective Assistance of Counsel During Sentencing Phase

Jones claims that his counsel was ineffective during the sentencing phase of his trial because *no* evidence of any mitigating circumstance was presented by his attorney. Jones claims that evidence of his subnormal intelligence should have been presented to the jury in mitigation of his sentence. While the defendant Jones did give a closing statement to the jury, his attorney presented nothing.[6]

In *Voyles v. Watkins,* 489 F.Supp. 901 (N.D.Miss.1980), the court was faced with a similar lack of presentation by defense counsel during the sentencing phase of the trial. The court responded:

As stated, petitioner's trial counsel failed to present any evidence of mitigating circumstances, although an array of witnesses to testify in mitigation would have been readily available upon proper investigation. An appeal to spare the petitioner's life could have been forcefully made through diligent efforts of his trial counsel. Instead, the entire defense at sentencing consisted of the following "argument" by counsel:

The defendant also submits the portion of the trial to you on the record as you now have it. The last instruction that the Court read has various circumstances in it called aggravating and mitigating. It is up to you to take all those, apply them to what you have heard, the testimony that is now in the record and to find whether any of those apply. I suppose the bottom line of this is you have to decide whether the imposition of the penalty of death upon Jimmy Voyles will benefit our society and serve the ends of justice. I think it will not. Thank you. (TR. 57–59).

---

**5.** It is not the intent of this Court that the jury's verdict of guilty to the actual crime of felony murder be set aside. It is this Court's opinion that in order to be convicted of felony murder under § 97–3–19(2)(e), the state need show only that the defendant was guilty of a robbery during which a killing was committed. However, *Enmund* prohibits the infliction of capital punishment as a consequence of the robbery unless the state proves that the defendant killed, intended to kill, or attempted to kill. Once the state proves this during the sentencing phase of the trial, the prohibitions of *En-* mund are no longer applicable. To this end, only when the state has presented evidence, and the jury has found that the defendant killed, attempted to kill, or intended to kill, may the state inflict the penalty of death.

While the Court is not directing that the *Enmund* factors be shown during the sentencing phase of the defendant's trial, it seems appropriate for the jury to address these elements during the deliberations relative to aggravating and mitigating circumstances.

**6.** TR. Vol. 4, p. 720.

We are thus faced with a situation where the defense attorney "put on what amounted to no defense at all," thereby making any showing of prejudice unnecessary. *See Davis v. Alabama, supra* [596 F.2d 1214] at 1221–22. However, we unhesitatingly believe that this lack of defense, at such a critical stage, due to ineffectiveness of counsel, resulted in great prejudice to petitioner. As the Fifth Circuit has noted, court-appointed counsel "cannot stand still and do nothing. That indeed might be the best evidence of incompetency, or infidelity, or ineffectiveness, or all three." *Williams v. Beto*, 354 F.2d 698, 706 (5 Cir.1965). Here, trial counsel, for all practical purposes, did "stand still and do nothing" at sentencing. This amounts to a clear violation of petitioner's constitutional rights to effective assistance of counsel and due process.

*Id.* at 912.

■■■■ While effective assistance of counsel is not errorless counsel, counsel must perform services that are reasonably adequate. *Herring v. Estelle*, 491 F.2d 125, 127 (5th Cir.1974). Counsel is ineffective "if he fails to investigate sources of evidence which may be helpful to the defense." *Davis v. Alabama*, 596 F.2d 1214, 1217 (5th Cir.), *vacated as moot*, 446 U.S. 903, 100 S.Ct. 1827, 64 L.Ed.2d 256 (1980).

■■■ In the present case, the petitioner's attorney offered no evidence in mitigation of the death sentence at the sentencing phase of petitioner's trial. After the prosecution rested, petitioner's attorney simply stated "The defense rests, your Honor." TR. Vol. 4, p. 720.

Evidence that the petitioner possessed subnormal intelligence was expressed in the testimony of Dr. Gilbert S. MacVaugh, a licensed clinical psychologist and witness on behalf of the petitioner at the hearing on this matter. Dr. MacVaugh testified that he administered the Weschler Adult Intelligence Scale (WAIS) and the results revealed that Jones had a verbal intelligence quotient (IQ) of 49, a performance IQ of 35, and a full scale IQ of 41. Dr. MacVaugh concluded that functionally, Jones was a mild mental retard.[7]

The sole issue here is whether Larry Jones' attorney effectively assisted his client during the sentencing phase of the petitioner's trial. The competence of the petitioner at the time of the crime was a matter for the jury to consider in reaching a decision on the petitioner's sentence. Accordingly, this factor should have been presented to the jury.

The Court is therefore of the opinion that the sentencing phase of the trial must be set aside as a result of ineffective assistance of counsel. While the state argues that this claim has been waived by lack of exhaustion, the Court finds that sufficient "cause" exists for this Court to excuse the prior lack of presentation. Furthermore, the "prejudice" that flows from this lack of defense is obvious. This Court, however, need not make this determination under the authority of *Voyles*.

## III. CONCLUSION

We therefore conclude that the petitioner is entitled to relief upon his petition for habeas corpus insofar as his sentence of death is affected. The Court holds that the sentence of death must be vacated due to the following errors of constitutional dimension: (1) imposition of the death sentence in violation of the eighth amendment under standards set forth by *Enmund v. Florida*[8] and (2) ineffective assistance of

---

7. The respondent offered the testimony of Dr. Glen Anderson, director of the forensic unit at the Mississippi State Mental Hospital at Whitfield. Dr. Anderson indicated that Jones could appreciate the difference between right and wrong and the gravity of capital murder. Dr. Anderson further testified that Jones was functioning at an IQ of 70 based on his observations.

8. The petitioner contends that he is permanently insulated from the imposition of the death penalty by virtue of the Double Jeopardy Clause. He argues that should the Court vacate his sentence on the basis of *Enmund*, then such vacation is necessarily predicated on this Court's finding an insufficiency of evidence that the petitioner killed, attempted to kill, or

counsel during the sentencing phase of the petitioner's trial. This renders it unnecessary for the Court to pass upon other errors of law asserted by petitioner.

An order in accordance with the opinion of this Court shall be submitted as provided by the local rules.

intended to kill; thus, a resentencing is barred under *Tibbs v. Florida,* —— U.S. ——, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

In *Tibbs* the Supreme Court clarified the issue of when a defendant whose conviction has been reversed may be retried without offending the Double Jeopardy Clause. The Court held that when a reversal is predicated upon the prosecution's failure to produce sufficient evidence to prove its case, i.e., insufficiency of the evidence, the Double Jeopardy Clause bars a retrial. However, where an appellate court sits as a "thirteenth juror" and disagrees with the jury's resolution of conflicting evidence, i.e., a reversal based on the weight of the evidence, a retrial is not precluded by the Double Jeopardy

Clause. *Tibbs v. Florida,* —— U.S. at —— ——, 102 S.Ct. at 2216.

In the case at bar, there is evidence in the record from which a jury could determine the petitioner's individual culpability. There is testimony to the effect that there was blood on a pair of combat boots Jones was wearing, and evidence that Jones was physically present in the business establishment where the murder occurred. This, of course, is necessary to obtain a conviction for felony murder. However, no determination of the weight to be given to such evidence was made by the jury. Under *Enmund,* this should have been considered during the sentencing phase of the petitioner's trial.